# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## LITTLE ROCK DIVISION

|  |  |  |
|---|---|---|
| IN RE:  BLAKE ROUSSEL and | * | |
| AMANDA ROUSSEL | * | Bankruptcy Case No: 4:11BK14470 |
| | * | |
| Debtors | * | |
| | * | |
| | * | |

| | | |
|---|---|---|
| CLEAR SKY PROPERTIES LLC | * | |
| and LuANN DEERE | * | |
| | * | Adversary Proceeding No: 4:11AP01266 |
| Plaintiffs | * | |
| V. | * | Appeal/ |
| | * | District Court No:  4:13CV00055 SWW |
| BLAKE ROUSSEL | * | |
| | * | |
| Defendant | * | |
| | * | |
| | * | |

## ORDER

Appellants Clear Sky Properties LLC ("Clear Sky") and LuAnn Deere ("Deere")

commenced this adversary proceeding, seeking a determination that a judgment debt of Appellee

Blake Roussel ("Roussel") is nondischargeable in bankruptcy under 11 U.S.C. §§ 523(a)(4) and

523(a)(6) .  Appellants appeal the final decision of the Bankruptcy Court,[1] finding only a portion

---

[1]The Honorable James G. Mixon, United States Bankruptcy Judge for the Eastern District of Arkansas.

of Roussel's judgment debt nondischargeable.[2]   After careful consideration, and for the reasons

that follow, the judgment of the Bankruptcy Court is reversed, and the case is remanded for

further proceedings as provided in this order.

## I.  Standard of Review

In bankruptcy proceedings, a district court ordinarily acts as an appellate court, reviewing

the bankruptcy court's legal conclusions *de novo*, and its findings of fact under the clearly

erroneous standard.  *See In re Muncrief*, 900 F.2d 1220, 1224 (8th Cir. 1990).   This Court may

not reverse the Bankruptcy Court's factual findings unless after reviewing the record it is left

with the "'definite and firm conviction that a mistake has been committed.'"  *In re Waugh,* 95

F.3d 706, 711 (8th Cir. 1996)(quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105

S.Ct. 1504, 1511(1985)).

## II.  Background

The following facts are undisputed.   In August 2006, Roussel and Deere formed Clear

Sky, a member-managed limited liability company, for the purpose of opening an Exit Realty

("Exit") franchise in Conway, Arkansas.  Exit's business model includes a  "residual income"

feature by which Exit real estate agents who bring new agents to the company earn a residual or

percentage of the sales commissions earned by their recruits.  Exit divides geographical areas

into franchise territories, and only the owners of a given  territory may open an Exit office within

that territory.  Exit mapped Conway for two franchise territories, hereinafter "Territory A" and

"Territory B."  On August 31, 2006, Deere and Roussel entered a franchise agreement covering

---

[2]The Bankruptcy Court found a portion of the judgment debt nondischargeable under
11 U.S.C. § 523(a)(4), and that finding is not challenged on appeal.

Territory A.[3]

Roussel and Deere served as the sole members of Clear Sky, each owning fifty percent, and in September 2006 the company began doing business as Exit First Choice Realty ("Exit First Choice") in Territory A.  Clear Sky's operating agreement set forth procedures governing the sale of members' ownership interests, and it provided that existing members would have a right of first refusal to buy a departing member's share.

In early 2007, Roussel proposed that he would sell his interest in Clear Sky to Rhonda Bletsh ("Bletsh") and Nathan Hutchins ("Hutchins"), licensed real estate agents who worked at the Exit First Choice office.  Roussel's negotiations with Bletsh and Hutchins fell through, he offered to sell his interest to Deere, but she declined his offer.

In July 2008, Clear Sky moved the Exit First Choice office to a new building.  Deere purchased the building with her own money, and she leased it back to Clear Sky.  On July 31, 2008, Roussel presented Deere with a document titled "Consent to Sale of Membership Interests of Clear Sky Properties LLC," which provided that Roussel would sell one-third of his fifty percent interest to Bletsh and another one-third to Hutchins.  However, the consent agreement was never executed, and Deere exercised her right of first refusal on August 28, 2008.  Deere purchased two-thirds of Roussel's interest for $52,000, making her the majority owner of Clear Sky and leaving Roussel a sixteen percent share.

Unbeknownst to Deere, Roussel, Bletsh and Hutchins had plans to open another real estate office in Conway.  On September 12, 2008, Roussel, Bletsh, and Hutchins filed articles of

---

[3]Deere and Roussel entered the franchise agreement with Exit sub-franchisor Exit Realty Arkansas, which is owned by Roussel's parents.

organization for Select Group Investments LLC.  On October 8, 2008, Select Group Investments
LLC, entered an Exit franchise agreement covering Territory B, and Roussel notified Deere by
text message that he was opening another Exit real estate office, named Exit Realty Select, with
Bletsh and Hutchins.  After Deere received Roussel's message, she went to the Exit First Choice
office and discovered that all data had been erased from the office computers.  Deere also found
files, monitors, signs, and lock boxes missing.  Twelve real estate agents who worked for Exit
First Choice and the office administrator followed Roussel to Exit Realty Select.

On February 13, 2009, Deere and Clear Sky filed a civil complaint against Roussel in the
Circuit Court of Faulkner County Arkansas, alleging breach of fiduciary duty/breach of loyalty,
fraud, breach of contract, and violation of the Arkansas Franchise Practices Act.  The state court
dismissed the fraud count, and the case proceeded to a jury trial on the breach of fiduciary duty
claims and Deere's separate claim for breach of contract.

At trial, Roussel testified that before he opened Exit Realty Select with Bletsh and
Hutchins, he and Deere shared the goal of expanding Exit First Choice's territory and purchasing
Territory B, and he acknowledged that purchasing Territory B would prevent another Exit office
from locating in Conway.  Deere testified that she would never have exercised her option to
purchase two-thirds of Roussel's fifty percent share if she had known that he had plans to open a
competing Exit office in Conway.

Clear Sky and Deere presented evidence that after Roussel formed another LLC and
opened Exit Realty Select, Clear Sky's commission revenues dropped, and Deere contributed
$58,800 to Clear Sky.  *See* ECF No. 1-10, at 140-144.  Deere testified that she closed the Exit
First Choice office in December 2010 to "stop the losses."  ECF No. 1-21, at 470.  The state

court also admitted into evidence a list of personal property items totaling $1,480 that, according

to Deere, were missing from the Exit First Choice office after Roussel announced that he was

opening another office with Bletsh and Hutchins.   *See* ECF No. 1-10, at 146-148.

The state court instructed the jury regarding Roussel's fiduciary duties as follows:

Plaintiff Clear Sky Properties LLC is a limited liability company.  A limited liability company is a type of business entity that has owners called members. At all relevant times, Blake Roussel was a member/owner of Clear Sky Properties LLC. At all relevant times, Plaintiff, LuAnn Deere was the other member/owner of Clear Sky Properties LLC.

Fiduciary duty exists between  a  member/owner and the limited liability company and  the other member/owners.  Blake Roussel, as a member, owed the following fiduciary duties to Clear Sky . . . and . . . Deere.

An LLC member has a duty of loyalty to the company.  This means that the member will act in the best interest of the company and its members, while subordinating his personal interests to that of the company and its members, while serving actively within the company, or even after he severs his day-to-day relationship with the company.

An LLC member has a duty not to do anything that might result in injury to the company or deprive it of profit or advantage, which his skill, knowledge and ability might personally bring to it.

An LLC member has a duty to retain and protect and develop the existing business opportunities of the LLC.

An LLC member has a duty not to compete with the LLC.

An LLC member has a duty to discharge his duties to the company in good faith.

An LLC member has a duty to deal fairly and honestly with the LLC, and other members, and imposes the responsibilities to fully and completely disclose any conflicts of interest between his interests and the LLC's interest that might make him act in his own best interest, at the expense or to the detriment of the LLC and its other members.

To be [effective], the disclosure must provide the whole truth without ambiguity or reservation, and disclose all significant facts.  The existence or performance of an agreement between the parties does not prevent the existence of a fiduciary duty

which arises from the relationship itself.

ECF No. 1-22, at 268-270. The state court further instructed that if the jury found in Clear Sky's favor, it should fix the amount of money that would compensate Clear Sky for the value of any lost income or property damage suffered as a result of Roussel's breach of fiduciary duty. With respect to Deere's damages, the court instructed jurors to consider the value of monetary harm or expense that Deere suffered as a result of the breach. *See id.*, at 270.

The state court also instructed the jury regarding punitive damages, according to the standard set forth under Ark. Code Ann. § 16-55-206 and Arkansas Model Jury Instruction 2218, stating as follows:

> In addition to compensatory damages for any actual loss that [Clear Sky and Deere] may have suffered as a result of his breach of fiduciary duty, they also ask for punitive damages from Blake Roussel. Punitive damages may be imposed to punish a wrong-doer and to deter others from similar conduct.

> In order to recover punitive damages from Blake Roussel, Plaintiffs have the burden of proving either first, Blake Roussel knew or ought to have known in the light of the surrounding circumstances, his conduct would naturally and probably result in damages, and that he continued such conduct [in][4] reckless disregard of the consequences from which malice may be inferred; or second, that Blake Roussel intentionally pursued a course of conduct for the purpose of causing damage or both.

> In arriving at the amount of damage, you may consider the financial condition of Blake Roussel as shown by the evidence. You are not required to assess punitive damages . . . , but you may do so if justified by the evidence.

> You may also consider an award of punitive damages only if you find that [Clear Sky

---

[4]The state court transcript records that the trial judge instructed that the plaintiffs had the burden of proving that Blake Roussel "continued such conduct *and* reckless disregard of the consequences from which malice may be inferred." ECF No. 1-22, at 271(emphasis added). However, the Court is confident that the state trial court instructed the jury in accordance with Arkansas Jury Instruction 2218, which requires that the plaintiff "continued such conduct *in* reckless disregard of the consequences from with malice may be inferred." Arkansas Model Jury Instruction 2218 (emphasis added).

or Deere] is entitled to recover compensatory damages.

*Id*. at 271-272.

The jury found that Roussel breached fiduciary duties to both Clear Sky and Deere.  The

jury awarded Clear Sky $300,000 in damages, which included $111,280.60 for past lost revenue,

$73,403 for future lost revenue, $1,480 for damage to property, and $113,836.40 in punitive

damages; and it awarded Deere compensatory damages in the amount of $58,800.  The jury also

found for Deere on her separate claim for breach of contract and awarded her $40,000.  The trial

court entered judgment in accordance with the jury's verdict and awarded Clear Sky and Deere

$82,611.25 in attorney's fees and $4,912 in costs and expenses.  *See* ECF No. 1, Attach. #9, at

87.

On July 11, 2011,  Roussel and his wife filed a voluntary petition for relief under Chapter

7 of the United States Bankruptcy Code.  Subsequently, Clear Sky and Deere initiated this

adversary proceeding, seeking a determination that Roussel's judgment debt for breach of

fiduciary duty[5] is excepted from discharge under 11 U.S.C. §§ 523(a)(4) and 523(a)(6).

Employing the doctrine of collateral estoppel affirmatively, Appellants moved for

summary judgment, arguing that the issues necessary for determining nondischargeability had

been litigated and resolved in the state court action.  Roussel filed a response in opposition to

summary judgment, and he furnished the Bankruptcy Court an unedited copy of the state court

record.  The Bankruptcy Court denied Appellants' motion without deciding whether the state

court findings were entitled to a preclusive effect.  The order denying summary judgment states,

in part, as follows:

---

[5]As noted in the Bankruptcy Court's memorandum opinion, the parties agree that Deere's
damage award for breach of contract is dischargeable in bankruptcy.

> [T]he parties have submitted over 2000 pages of documents . . . most of which are
> irrelevant to the proceeding . . . . Obviously, this matter can best be resolved by trial
> on the merits in this Court which will consider only matters relevant to the issues in
> the bankruptcy proceedings. . . Trial on the merits of this core proceeding will be
> held as originally scheduled . . . .

ECF No. 1-28.

After denying Appellants' motion, the Bankruptcy Court held a two-day trial at which it

heard evidence regarding the testimony and documentary evidence admitted during the during

the state court jury trial.  The Bankruptcy Court permitted additional testimony that was not part

of the state court record on the ground that it was relevant to the show Roussel's state of mind.

*See* ECF No. 1-38, at 27 (Tr. at 258).  In its final order, the Bankruptcy Court summarized that

additional testimony as follows:

> Bletsh testified that there was never any intent to harm Clear Sky when Bletsh,
> Hutchins, and Roussel opened up Exit Select.  Bletsh and Hutchins testified that
> they believed there were benefits to having two Exit offices owned in Conway
> because it could strengthen the Exit brand.  Bletsh explained that under the Exit
> system, Deere would continue to receive any residual due her as a result of any agent
> she initially sponsored, regardless of which Exit office the agent operated from.
> Roussel testified that Deere received ten percent of the commission in residuals on
> all of Bletsh and Hutchins' sales.
>
> Bletsh and Roussel testified that there were ongoing discussions regarding trying
> not to harm Clear Sky because the public perceives both Exit offices as one entity.
> Hutchins testified that he had no recollection of any such discussions.
>
> Scott Jones (Jones) was initially an associate broker at Clear Sky.  Bletsh asked
> Jones to be the principal broker for Exit Select until she could get her license.  Jones
> testified that he initially was concerned about there being two Exit offices in Conway
> but his concerns were assuaged when he discovered that Exit initially designated
> Conway to add two franchises to the town.   Jones also testified that Exit Select
> would be better off if Clear Sky did well because the public links the two offices as
> one.
>
> There was a list of items presented to the jury in state court that Deere alleges were
> taken when the new office was opened. (Pl. Ex. 17.) Bletsh, Hutchins, Roussel and

Jones all testified that items on the list that were taken were taken by mistake and returned to Deere.

Deere testified that the mass defection of her agents to Exit Select was financially devastating. Bletsh, Hutchins, Roussel and Jones all testified that no agents were solicited to leave Clear Sky, rather they all came on their own accord.

*In re Roussel,* 483 B.R. 915, 921 (Bankr. E.D. Ark. 2012).

The Bankruptcy Court determined that only a portion of Roussel's judgment debt–specifically, the $1,480 award to Clear Sky for property damage--is excepted from discharge under § 523(a)(4) and that the remainder of the debt is dischargeable in bankruptcy. Appellants appealed the Bankruptcy Court's judgment and elected to have the appeal heard by this court, pursuant to 28 U.S.C. § 158(c)(1)(A).

### III.

The Bankruptcy Court's memorandum opinion does not clearly delineate findings regarding the application of collateral estoppel and the merits of Appellants' claims.  However it is clear that, in addition to determining that the doctrine of collateral estoppel did not apply, the Bankruptcy Court assessed testimony that was not part of the state court record and made an independent determination as to whether Roussel's judgment debt is nondischargeable under §§ 523(a)(4) and 523(a)(6).  On appeal, Appellants argue that the Bankruptcy Court failed to give the state court findings the preclusive effect required under the doctrine of collateral estoppel and erred in finding that Roussel's judgment debt, with the exception of the award for property damage, fails to qualify for an exception to discharge under §§ 523(a)(4) and 523(a)(6).

### A.  Section 523(a)(4)

Section 523(a)(4) of the Bankruptcy Code provides that "a discharge [in bankruptcy]

does not discharge an individual debtor from any debt . . . for . . . defalcation while acting in a fiduciary capacity . . . . " 11 U.S.C. § 523(a)(4).   Nondischarge under § 523(a)(4) requires a showing of two elements: (1) the existence of a fiduciary relationship between the debtor and the objecting party and (2) a defalcation committed by the debtor in the course of that fiduciary relationship.  *See Jafarpour v. Shahrokhi* (*In re Shahrokhi*), 266 B.R. 702, 707 (8ᵗʰ Cir. BAP 2001).   Appellants argue that both elements were decided in their favor in state court action and that the Bankruptcy Court was bound, under the doctrine of collateral estoppel, to declare the state court judgment nondischargeable under § 523(a)(4).

Collateral estoppel applies in bankruptcy discharge proceedings to bar the relitigation of factual or legal issues that were determined in a prior state action.  It is a "general and well-settled rule that a judgment, not set aside on appeal or otherwise, is equally effective as an estoppel upon the points decided, whether the decision be right or wrong."  *Reed v. Allen*, 286 U.S. 191, 201, 52 S.Ct. 532, 534 (1932)(citations omitted).   The full faith and credit statute, 28 U.S.C. § 1738,[6] requires federal courts to give the same preclusive effect to state court judgments as the state from which the judgment emerged.  *See In re Bullard,* 449 B.R. 379, 384 (8ᵗʰ Cir. 2011)(citations omitted).  The  elements of collateral estoppel in Arkansas are as follows:  (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) that issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment.  *See id.*

As the Bankruptcy Court acknowledged in its final order, it is undisputed that the

_____

[6]Title 28 U.S.C. § 1738 provides, in relevant part, that the "Acts, records and judicial proceedings" of any State "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."

following questions of state law were actually litigated and answered in the affirmative in the

state court proceeding: (1) whether Roussel owed fiduciary duties to Clear Sky and Deere; (2)

whether Roussel breached his fiduciary duties to Clear Sky and Deere; (3) whether Roussel's

fiduciary breach was a proximate cause of damages to Clear Sky and Deere; and (4) whether

Clear Sky was entitled to punitive damages as a result of Roussel's fiduciary breach.   Without

question, the foregoing issues were actually litigated in state court, and the determination of

those issues was essential to a valid and final judgment.   The critical question here is whether the

elements necessary for nondischarge under § 523(a)(4)–that is, the existence of a fiduciary

relationship and defalcation–are the same as the issues already determined in state court.

### (1)      Same Issue–Fiduciary Duty of Loyalty

Whether a fiduciary relationship exists for purposes of § 523(a)(4) is a question of federal

law, and it has long been held that a debtor acts in a fiduciary capacity in the bankruptcy context

only if he serves in a technical or express trust.  *See In re Cochrane,* 124 F.3d 978, 984 (8th Cir.

1997)(citing *Lewis v. Scott*, 97 F.3d 1182, 1185 (9th Cir. 1996)).  The statute "'speaks of

technical trusts, and not those which the law implies from the contract.'"   *In re Nail*, 680 F.3d

1036, 1039(quoting *Davis v. Aetna Acceptance Co*., 293 U.S. 328, 333, 55 S.Ct. 151 (1934) and

*Chapman v. Forsyth*, 43 U.S. 202, 208, 2 How. 202 (1844)).  "It is not enough that, by the very

act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as

a trustee ex maleficio.  He must have been a trustee before the wrong and without reference

thereto." *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151 (1934).

The rule that § 523(a)(4) applies only in cases of special or technical trusts, as opposed to

implied or constructive trusts, prevents an expansive application of § 523(a)(4) that would except

11

ordinary commercial debts from discharge in bankruptcy.[7]  The technical trust requirement does

not, however, require the that debtor serve as a trustee under a formal trust agreement.  *See In re*

*Hayes,* 183 F.3d 162, 169 (2ⁿᵈ Cir. 1999)("Notably, the Court in *Chapman* spoke of "special

trusts" not in the modern sense of a legal relationship where a party (the trustee) is the legal

owner of property beneficially held on behalf of others, but more generally of the class of

relationships in which special trust is bestowed upon a party.").

Federal law dictates the boundaries of § 523(a)(4), but fiduciary relationships satisfying

the statute can be created by state statute, common law, or contract.  *See In re Thompson,* 686

F.3d 940, 944 -945 (8th Cir. 2012)(citing *In re Long*, 774 F.2d 875, 878 (8th Cir. 1985)).   For

example, the Eighth Circuit has held that the attorney-client relationship, without more,

constitutes a fiduciary relationship within the meaning of § 523(a)(4), *see In re Cochrane*, 124

F.3d 978, 984 (8th Cir. 1997), and that a "statute or other state law rule may create fiduciary

status in [a corporate] officer which is cognizable in bankruptcy proceedings." *In re Long,* 774

F.2d 875, 878 (8th Cir. 1985).  And in *Laughter v. Speight*, 16 F.3d 287 (8th Cir. 1994), the Court

of Appeals found that a state court judgment "rendered in the context of an accounting on

---

[7]The precept that § 523(a)(4) applies only to express or technical trusts comes from a long line of cases beginning with *Chapman v. Forsyth*, 43 U.S. 202, 2 How. 202,  11 L.Ed. 236 (1844), where the Supreme Court held that a factor who sold goods on behalf of the owner and was contractually bound to hold the money for the owner's use was not a fiduciary under bankruptcy law.  The Bankruptcy Act in effect at the time excepted from discharge debts "created in consequence of the defalcation as a public officer, or as executor, administrator, guardian, or trustee, or while acting in any other fiduciary capacity,"  Bankruptcy Act of 1841, ch. IX, § 2, 5 State 441 (1841)(repealed 1843).  The *Chapman* Court noted that the statute's specifically itemized exceptions, *e.g.*, defalcation as a public officer, executor, administrator, or trustee, "are not cases of implied but special trusts, and the 'other fiduciary capacity' mentioned, must mean the same class of trusts."  *Chapman,* 43 U.S. at 208.   The Court concluded: "The act speaks of technical trusts, and not those which the law implies from the contract. A factor is not, therefore, within the act."  *Id*.  The Supreme Court remarked that a contrary interpretation "would have left but a few debts on which the [bankruptcy] law could operate."  *Id*.

dissolution of a partnership, was quite plainly based on a finding that the debtor had committed a defalcation in the context of a fiduciary relationship." *Laughter*, 16 F.3d at 287.

Here, the state court did not charge Roussel with fiduciary duties under a constructive or implied trust theory.   The court instructed the jury that Roussel owed fiduciary duties to both Clear Sky and Deere at all relevant times,[8] and the undisputed evidence established that Roussel was a  member of Clear Sky before, during, and after he sold a portion of his Clear Sky interest to Deere and started another LLC and a competing Exit real estate office.

The state court instructed the jury that Roussel owed Clear Sky and Deere the duty of loyalty, meaning that he would "act in the best interest of the company and its members, while subordinating his personal interests to that of the company and its members, while serving actively with the company, or even after he [severed] his day-to-day relationship with the company."  ECF No. 1-22, at 269 (State Tr. at 1406).  The court further instructed that Roussel owed Clear Sky and Deere additional duties, which are generally deemed subsidiary to the duty of loyalty, including the duty not to compete against the LLC, the duty to deal fairly and honestly with the LLC and its members and disclose conflicts of interest, and the duty to refrain from action that might result in injury to the company or deprive it of profit or advantage.

In determining whether Roussel's duty of loyalty compared to the fiduciary requirement under § 523(a)(4), the Bankruptcy Court focused on the identity of a "definable res" and the nature of the damages awarded in state court.   The Bankruptcy Court associated Clear Sky's award for lost revenue and Deere's award for monetary harm with the duty of loyalty, but it

---

[8]Under Arkansas law, the determination of the existence of a fiduciary duty in a particular relationship is a matter of law, and it is error to submit that issue to the jury.  *See Long v. Lampton,* 324 Ark. 511, 524, 922 S.W.2d 692, 700 (1996).

associated Clear Sky's award for property damage with the duty of care,[9] a duty that was not referenced in the state court's jury instructions.

The Bankruptcy Court found that the duty of loyalty "is simply not the type of fiduciary duty to which § 523(a)(4) refers"and that "the jury award for breach of fiduciary duty regarding . . . lost revenue . . . and the amount awarded to Deere for breach of fiduciary duty . . . is dischargeable pursuant to § 523(a)(4)." *In re Roussel*, 483 B.R. 915, 923 (Bankr. E.D. Ark. 2012).   Citing *In re Nail*, 680 F.3d 1036 (8th Cir. 2012), the Bankruptcy Court reasoned that a fiduciary duty under § 523(a)(4) is created and defined by the property at issue and that Roussel's duty of loyalty was not associated with a "definable res." According to the Bankruptcy Court, it was bound to "look at the 'res' and examine what the duties are." *In re Roussel*, 483 B.R. 915, 923 (Bkrtcy. E.D. Ark. 2012).   The Bankruptcy Court concluded that Appellants failed to point to a definable res associated with Roussel's duty of loyalty, stating as follows:

> The Plaintiffs argue that the 'definable res' include the assets of the limited liability company, i.e., "the agents, Roussel's relationship as a managing member with those agents, Roussel's relationship with the Exit franchisers, and Roussel's own efforts as a salesman." (Pl.'s Closing Trial Brief). This is not a "definable res" for purposes of § 523(a)(4). This Court finds that people, relationships, and efforts do not make a valid res for purposes of § 523(a)(4).

*Id.*

---

[9]The Bankruptcy Court  found that Clear Sky property that was missing or damaged after Roussel left Exit First Choice qualified as a "definable res" and that Roussel breached a duty of care with regard to that property.  Based on the jury award for damage to Clear Sky property, the Bankruptcy Court found that "Roussel committed a defalcation regarding Clear Sky's property" and that the corresponding damage award for $1,480 was nondischargeable under § 523(a)(4). Appellants do not contest the Bankruptcy Court's decision that Roussel's judgment debt for property damage is nondischargeable.  Appellants argue, however, that the Bankruptcy Court's findings are inconsistent.  According to Appellants, "If Roussel was acting in a fiduciary capacity as it related to any damage, he was acting in a fiduciary capacity for all purposes."  ECF No. 6 at 18.

The Court finds that the Bankruptcy Court placed too much emphasis on a "definable res" requirement.  The value of  experienced employees, business opportunities, and expected future revenue contribute the goodwill of a company, which although intangible, qualifies as a business asset.  The Court also disagrees that the Eighth Circuit's decision in *In re Nail* mandates that the existence of a fiduciary relationship in this case depends on the identification of a "definable res."

In the case of *In re Nail*, the Eighth Circuit considered whether a state statute imposed fiduciary duties for the purpose of § 523(a)(4).  The statute in question prescribed the legal effect when a party to an assigned account in good faith pays an assignor rather than the unknown assignee, and it provided that "the assignor ... shall be a trustee of any sums so paid and shall be accountable and liable to the prior assignee thereof."  *In re Nail*, 680 F.3d 1036, 1039 (8th Cir. 2012)(quoting Ark. Code Ann. § 4–58–105(b)(2)).  The Eighth Circuit noted that the so-called trust created by the statute had a "purely nominal existence" until the debtor failed to remit proceeds to the proper party and that the debtor was not a trustee "before the wrong and without reference thereto." *In re Nail,* 680 F.3d at 1041(citing *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S.Ct. 151 (1934)).  Under those circumstances, the Eighth Circuit found that "the mere use of the word 'trustee,' when viewed in the context of the statute as a whole, does not reflect a legislative intent to create the kind of express or technical trust required in the strict and narrow sense under § 523(a)(4)." *Id.*

In reaching its decision, the Court of Appeals noted:  "[T]o meet the requirements of § 523(a)(4), a statutory trust must (1) include a definable res and (2) impose 'trust-like' duties." *Id.* (citing *Matter of Tran*, 151 F.3d 339, 342–43 (5th Cir.1998)).   But the requirement of a

"definable res" with respect to a statutory trust merely serves to ensure that the alleged trust exists before and without reference to the wrong.  Unlike *In re Nail*, this case does not involve a statutorily-created "trust" that imposes ex post facto trustee duties as a remedial measure in the context of an ordinary commercial transaction.  The duty of loyalty owed by Roussel pre-existed and was independent of the wrongful conduct that gave rise to his judgment debt.[10]

"'An issue may be 'actually' decided even if it is not *explicitly* decided, for it may have constituted, logically or practically, a necessary component of the decision reached in the prior litigation.'" *In re Smith*, 270 B.R. 544, 548 (Bankr. D. Mass. 2001)(citing *Grella v. Salem Five Cent*

---

[10]Under Arkansas law, the duty of loyalty owed by a managing member of an LLC to the LLC and its members exists upon creation of the LLC and without reference to wrongful conduct.  The Arkansas Small Business Entity Tax Pass Through Act authorizes the organization of limited liability companies in the state.  Among its provisions, the Act provides: "Unless displaced by particular provisions of this chapter, the principles of law and equity supplement this chapter."  Ark. Code Ann. 4-32-1304(b).  Subchapter 4 of the Arkansas LLC Act addresses the duties of care and loyalty that a party with management authority owes the LLC and its members.  Regarding the duty of loyalty, unless otherwise provided in a company's operating agreement, Ark. Code Ann. § 4-32-402(2) requires a member or manager of an LLC to account to and hold as trustee for the LLC any secret profits derived from any transaction connected to the conduct or winding up of the LLC or from the use of confidential or proprietary information or other matters entrusted to the member or manager because of his status.  *See* Ark Code Ann. § 4- 32-402(2).

Commentary to the Prototype Act upon which the Arkansas Act is based explains that § 4-32-402(2) embodies the duty of loyalty set forth under § 21(1) of the Uniform Partnership Act ("UPA").  *See* Frances S. Fendler, *A License to Lie, Cheat, and Steal?  Restriction or Elimination of Fiduciary Duties in Arkansas Limited Liability Companies*, 60 Arkansas Law Review 643, 679 (2007)(citations omitted).  The Arkansas Supreme Court has interpreted § 21(1) broadly.  *See St. Joseph's Regional Health Center v. Munos*, 934 S.W.2d 192, 326 Ark. 605 (1996)(observing that partners must observe utmost good faith toward each other in all of their transactions from time they begin negotiations with each other to complete settlement of partnership affairs); *White v. Hickey*, 651 S.W.2d 467, 8 Ark. App. 264 (1983)(same); *Creswell v. Keith,* 235 Ark. 653, 655-656, 361 S.W.2d 542, 544 (1962)(reaffirming prior cases emphasizing the trust relationship existing between partners and observing that one partner owes to the other the duty to make full and complete disclosure of assets and liabilities before purchasing his interest).

*Sav. Bank,* 42 F.3d 26, 30-31 (1ˢᵗ Cir. 1994)).  In this case, the Court finds that Roussel's fiduciary

duty of loyalty to Clear Sky and Deere, as determined by the state court, is equivalent to a finding

that he acted in a fiduciary capacity as required under § 523(a)(4).  Accordingly, relitigation of that

particular issue is precluded under the doctrine of collateral estoppel.

### (2)    Same Issue - Defalcation

The second element required to find the state court judgment nondischargeable under

§ 523(a)(4) is that Roussel committed a defalcation while acting in his fiduciary capacity.

Because the Bankruptcy Court found that Roussel's fiduciary duty of loyalty did not qualify as a

fiduciary duty under § 523(a)(4), it never addressed whether Roussel's fiduciary breach

amounted to a defalcation under § 523(a)(4).

 The undisputed evidence presented in state court established that Roussel sold some of

his interest in Clear Sky without informing Deere that he would compete with Clear Sky, and

that Roussel, while a member of Clear Sky, engaged in direct competition with the LLC without

obtaining Deere's consent.  The state jury found that Roussel breached his fiduciary duty of

loyalty to both Clear Sky and Deere, and it is clear that a fiduciary's breach of the duty of loyalty

comes within the ambit of conduct that qualifies as a  "defalcation" under § 523(a)(4).  *See*

*Bullock v. BankChampaign, N.A.,* — U.S. —, 133 S. Ct. 1754, 1760 (2013)(noting that the term

"defalcation" as commonly used and as Congress might have understood it, can encompass a

breach of fiduciary obligation that involves neither conversion, nor taking and carrying away

another's property, nor falsity)(citing Black's Law Dictionary 479 (9th ed. 2009)); *see also In re*

*Baylis,* 313 F.3d 9, 20 (1ˢᵗ Cir. 2002)("Defalcation may be presumed from breach of the duty of

loyalty, the duty not to act in the fiduciary's own interest when that interest comes or may come

into conflict with the beneficiaries' interest); *In re Cochrane,* 124 F.3d 978, 984 (8th Cir. 1997)(holding that debtor's conduct resulting in a state court judgment for breach of fiduciary duties, including the failure to disclose his stake in an investment aimed at buying out his client's failing business, fell within the fiduciary defalcation to discharge).   But the inquiry does not end there because not every debt that arises from a breach of a fiduciary duty amounts to a defalcation for purposes of § 523(a)(4).

The Eighth Circuit has held that a finding of  "defalcation" under § 523(a)(4) does not require evidence of intentional wrongdoing.   *See In re Cochrane*, 124 F.3d 978, 984 (8th Cir. 1997).   During the pendency of this appeal, however, the Supreme Court issued a decision in *Bullock v. BankChampaign, N.A.*, — U.S. —, 133 S.Ct. 1754 (2013), holding that the term "defalcation" under § 523(a)(4) "includes a culpable state of mind requirement" which involves the "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior."  *Bullock*, 133 S. Ct. at 1756.[11]

_____

[11] In *Bullock*, the debtor acted as trustee of a trust established by his father for the benefit of the debtor and his siblings.  *See Bullock v. BankChampaign, N.A.*, — U.S. —, 133 S.Ct. 1754, 1757 (2013).  While serving as trustee, the debtor borrowed funds from the trust and repaid the funds with six percent interest.  *Id*.  The debtor's siblings sued him for breach of fiduciary duty in state court, and the trial court ruled that the debtor's act of self-dealing constituted a breach of his fiduciary duty as trustee.  The state court noted that the debtor "[did] not appear to have had a malicious motive in borrowing funds from the trust" but "neither the facts nor the circumstances . . . excused him from liability ."  *In re Bullock,* No. 09-84300-JAC-7, 2010 WL 2202826, *3 (Bankr. N. D. Ala. May 27, 2010).  For the purpose of securing payment of the judgment, the state court imposed a constructive trust on the debtor's interest in the original trust, and BankChampaign served as trustee for all of the trusts.  *See Bullock*, 133 S. Ct. at 1757.

The debtor sought discharge in bankruptcy, and BankChampaign opposed discharge on collateral estoppel grounds, arguing that the state court's findings met the elements for nondischarge under § 523(a)(4).  *See In re Bullock,* No. 09-84300-JAC-7, 2010 WL 2202826, *1 (Bankr. D. Ala. May 27, 2010).  The bankruptcy court granted the motion and found the judgment debt nondischargeable.

In a unanimous decision, the *Bullock* Court held that "where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term [defalcation] under § 523(a)(4)] requires an intentional wrong." *Id*. at 1759.  The Court included as intentional, "not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent."  *Id*.  Quoting the Model Penal Code, the Court stated:  "Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary 'consciously disregards' (or is willfully blind to) 'a substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty." *Id*.(quoting ALI, Model Penal Code     § 2.02(2), p. 226 (1985)).  The Court added:  "That risk 'must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a *gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation." *Id*.

The state court's jury instructions permitted the jury to award punitive damages if the plaintiff proved one or both of the following aggravating factors:  (1) that Roussel knew or ought

---

On appeal, the district court affirmed, and the Eleventh Circuit affirmed the district court. Regarding the state of mind required for defalcation, the Court of Appeals held that § 523(a)(4) requires more than negligence and "requires a known breach of a fiduciary duty, such that the conduct can be characterized as objectively reckless,"  *In re Bullock*,  670 F.3d 1160, 1166 (11th Cir. 2012), and that the debtor's conduct met that standard.  The Court reasoned that because the debtor served as trustee "he certainly *should have known* that he was engaging in self-dealing, given that he knowingly benefitted from the loans.  Thus, his conduct can be characterized as objectively reckless, and as such, it rises to the level of a defalcation under § 523(a)(4)." *Id*.(emphasis added).

Because the Eleventh Circuit applied a standard of  objective recklessness, rather than the gross recklessness standard announced in *Bullock*, the Supreme Court remanded stating: "We . . . remand the case to permit the court to determine whether further proceedings are needed and, if so, to apply the heightened standard that we have set forth."  *Id*. at 1761.

to have known in the light of surrounding circumstances that his conduct would naturally and probably result in damages, and that he continued such conduct in reckless disregard of the consequences from which malice may be inferred or (2) that Roussel intentionally  pursued a course of conduct for the purpose of causing damage.  Given the disjunctive nature of the jury instruction, it is impossible, but unnecessary, to know the jury's specific finding.

Under *Bullock*, the crucial inquiry is whether the fiduciary knows that his conduct will violate the applicable standard of care.  A conscious disregard of or willful blindness to a substantial and unjustifiable risk that conduct will breach a duty satisfies the knowledge requirement, and whether a risk is substantial and unjustified depends on the fiduciary's purpose and the circumstances known to him.   The first aggravating factor set forth in the state jury instructions required the jury to find that malice may be inferred from the defendant's conduct and his reckless disregard of the consequences.  This standard is more stringent than the objectively reckless standard that the *Bullock* decision rejects.  Furthermore, the second and alternative aggravating factor requires the jury to find that the defendant intentionally caused damage and therefore meets the statutory requirement for nondischargeability.  Accordingly, the Court finds that the requisite state of mind for defalcation was actually litigated and decided in state court.

For the reasons stated, the Court finds that Roussel is collaterally estopped from contesting whether his judgment debt for damages to Clear Sky and Deere is nondischargeable under § 523(a)(4).  Accordingly, the portion of Roussel's judgment debt awarding compensatory and punitive damages for breach of fiduciary duty is nondischargeable under § 523(a)(4), and the Bankruptcy Court's determination to the contrary is reversed.

**B. Section 523(a)(6)**

Pursuant to 11 U.S.C. § 523(a)(6), debts "for willful and malicious injury by the debtor to another entity or to the property of another entity" are nondischargeable. The terms "willful" and "malicious" connote two distinct elements, and both must be proven by a preponderance of the evidence. *See In re Porter,* 539 F.3d 889, 893 (8th Cir. 2008).

In the context of § 523(a)(6), the word "willful" modifies the word "injury," thus nondischargeability requires a deliberate or intentional injury, not merely a deliberate or intentional act that leads to an injury. *See Kawaauhau v. Geiger*, 523 U.S. 57, 6, 118 S.Ct. 974 (1998). Debts resulting from injuries caused by reckless or negligent conduct fail to satisfy the willfulness standard--at the least, willfulness requires a showing that the debtor knows that the consequences were certain, or substantially certain, to result from his conduct. *See In re Porter,* 539 F.3d 889, 894 (8th Cir. 2008)(citing *In re Patch*, 526 F.3d 1176, 1180 (8th Cir. 2008)). The separate malice requirement mandates a heightened level of culpability and requires a showing that the debtor's willful conduct was "'targeted at the creditor . . . at least in the sense that the conduct is certain or almost certain to cause . . . harm.'" *In re Scarborough*, 171 F.3d 638, 641 (8th Cir. 1999)(quoting *In re Miera*, 926 F.2d 741, 743–44 (8th Cir. 1991)).

Clear Sky maintains that the state court's punitive damage award establishes that all damages awarded to Clear Sky for breach of fiduciary duty are excepted from discharge under § 523(a)(6). The Bankruptcy Court disagreed because it found that the state court's jury instructions did not require a finding that Clear Sky's injury was both "willful and malicious." After concluding that the doctrine of collateral estoppel had no application, the Bankruptcy Court specifically addressed the question of Roussel's state of mind and found as follows:

> There was no proof offered that Roussel intended a deliberate or intentional injury. Rather, the proof offered was that Roussel could harm Deere's business by causing the failure of Clear Sky. There was also no substantial certainty that Deere would be financially harmed by Roussel opening another franchise. Rather, proof was offered that Exit initially mapped Conway for two franchises. Nothing in the record or in the state court record suggests that Roussel, Bletsh, or Hutchins ever solicited agents to leave Deere's franchise. The Plaintiffs were unable to show that Roussel intentionally invaded any of Deere's legally protected interests or intentionally harmed Deere. The Plaintiffs did not prove by a preponderance that Roussel incurred the state court judgment as a result of a willful and malicious injury to Deere.

*In re Roussel,* 483 B.R. 915, 924 -925 (Bankr. E.D. Ark. 2012)

Appellants' precise argument is that a finding of either or both of the aggravating factors set forth in the state court's punitive damage instruction amounts to a finding of malice and that Roussel's willfulness was established by the undisputed fact that at all relevant times, he knew that he was a managing member of Clear Sky. This Court agrees with both assertions.

The state court's jury instruction permitted an award of punitive damages only if the jury found that Roussel intentionally pursued a course of conduct for the purpose of causing damage or that he acted with such conscious indifference to consequences that malice could be inferred. Regardless of the jury's exact finding, the award of punitive damages shows that the jury found, at the very least, that Roussel's conduct was certain or almost certain to result in damage or harm to Clear Sky, which meets the "malicious injury" requirement under § 523(a)(6). *See In re Porter,* 539 F.3d 889, 894 (8th Cir. 2008)(quoting *In re Nangle,* 274 F.3d 481, 484 (8th Cir. 2001)(quoting *In re Long,* 774 F.2d 875, 881 (8th Cir.1985)("Maliciousness is conduct 'targeted at the creditor ... at least in the sense that the conduct is certain or almost certain to cause ... harm.'"). Accordingly, Roussel is collaterally estopped from contesting whether his judgment debt for compensatory and punitive damages to Clear Sky is for a "malicious injury" under

§ 523(a)(6).

Contrary to the Bankruptcy Court's findings, this Court finds that the "willful . . . injury" requirement is also met.   The scope of a "willful . . . injury" under § 523(a)(6) is not confined to circumstances in which the debtor desires to bring about the harmful consequences of his conduct.   "It is enough '[i]f the debtor knows that the consequences are certain, or substantially certain, to result from his conduct.'" *In re Porter,* 539 F.3d 889, 894 (8th Cir. 2008)(quoting *In re Patch*, 526 F.3d 1176, 1180 (8th Cir. 2008)).

Here, the undisputed evidence leaves no question that Roussel knew that his conduct would give rise to the injury at issue–the breach of his duty of loyalty to Clear Sky.[12]   Roussel's own testimony shows that he was aware that he was a member of Clear Sky when he purchased Territory B on behalf of Select Group Investments LLC, when he opened a competing Exit realty office in Conway, and when he engaged in direct competition with Clear Sky--all without Deere's consent.   Furthermore, Roussel's own testimony demonstrated that he knew that Clear Sky had an interest in purchasing Territory B and preventing another Exit office from opening in Conway.   After careful review of the entire record, the Court finds that the Bankruptcy Court clearly erred in its assessment of whether Roussel willfully breached his fiduciary duty to Clear Sky.   Accordingly, the decision of the Bankruptcy Court on the issue of the dischargeability under § 523(a)(6) should be, and hereby is, reversed.

---

[12]"The plain language of § 523(a)(6) requires courts applying the exemption to first determine exactly what 'injury' the debt is 'for,' and then determine whether the debtor both 'willful[ly] and malicious[ly]' caused that 'injury.'" *In re Patch*, 526 F.3d 1176, 1181 (8th Cir. 2008).   Here, the injury giving rise to the portion of the judgment debt awarding Clear Sky actual and punitive damages is Roussel's breach of the fiduciary duty of loyalty owed to Clear Sky, but the Bankruptcy Court's analysis focuses on whether Roussel, Bletsh, and Hutchins intended financial harm to Deere.

**C.  Attorney's Fees and Costs**

The state court awarded Appellants $82,611.25 in attorney's fees and  $4,912 in costs.  In support of their motion for a fee award , Appellants argued that Clear Sky's operating agreement provided that in any dispute arising between Clear Sky members, the losing party would pay the prevailing party reasonable costs and expenses, including attorney's fees.  *See* ECF No. 1-9, at 59-60.   Appellants also claimed a right to attorney's fees under Ark. Code Ann. § 16-22-308, which provides:

> In any civil action . . . for . . . *breach of contract*, unless otherwise provided by law or contract which is the subject matter of the action, the prevailing party may be allowed a reasonable attorney's fee to be assessed by the court and collected as cost.

Ark. Code Ann. § 16-22-308(emphasis added).  In a two-sentence order, the state court granted the motion for fees and costs, stating: "Based on the arguments in the Motion and Brief, the Motion is hereby GRANTED . . . . "  *See* ECF  No. 1-9 at 87.

Consistent with the state court's order, the Bankruptcy Court attributed Appellants' fee award to the operating agreement fee provision or Ark. Code Ann. § 16-22-308.  The Bankruptcy Court reasoned that because the state court awarded fees and costs based on "contract or breach of contract, which is dischargeable in Bankruptcy[,]"  *In re Roussel,* 483 B.R. 915, 925 (Bankr. E.D. Ark. 2012), Appellants' fee award was also dischargeable in bankruptcy.

 "Ancillary obligations such as attorneys' fees . . . may attach to the primary debt; consequently, their status depends on that of the primary debt."  *In re Hunter*, 771 F.2d 1126, 1131 (8th Cir. 1985)(citation omitted)(emphasis added).  The Eighth Circuit has held that when parties have included a provision authorizing recovery of attorney's fees in a contractual

agreement, and those fees are incurred in connection with a debt determined to be nondischargeable in bankruptcy, the creditor may be entitled to recover such fees as part of the nondischargeable debt. *See In re Alport*, 144 F.3d 1163, 1168 (8th Cir. 1998)("The Ritters' attorney fees were properly included in the nondischargeable debt . . . because attorney's fees provided by contract, like accrued interest, can become part of the debt."). Accordingly, on remand, the Bankruptcy Court should consider whether the fee provision set forth in Clear Sky's operating agreement renders all or any part of Appellants' fee award part of the nondischargeable debt in this case.

## IV.

For the reasons stated, the judgment of the Bankruptcy Court is reversed and the case is remanded for further proceedings addressing whether the fee provision set forth in Clear Sky's operating agreement renders all or any part of Appellants' fee award part of the nondischargeable debt.

IT IS SO ORDERED THIS 30th DAY OF DECEMBER, 2013.


/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE